Wm. Breck Seiniger, Jr. (ISB 2387)
SEINIGER LAW OFFICES, P.A.
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax:    (208) 345-4700
Email: wbs@seinigerlaw.com

*Attorney for the Jennifer Babbitt*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Jennifer Lynn Babbitt**, | |
| *Plaintiff* | CIVIL CASE NO. |
| **vs.** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Ada County**, *a political subdivision of the State of Idaho*, **The Ada County Sheriff's Office**, **Ada County Sheriff Gary Raney** *in his official and individual capacities* **Kate Pape** *in her official and individual capacities*, and **Rebecca Peterson** *in her official and individual capacities*, | |
| *Defendants.* | |

        COME NOW Jennifer Lynn Babbitt, by and through counsel, and for cause of action alleges as follows:

### I.
### JURISDICTION

1.    The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332 because Plaintiff

        asserts claims arise under 42 U.S.C. § 1983 and 42 U.S.C. Chapter 126 §12101, *et.*

        *seq.* with respect to which this Court has jurisdiction authorized by 28 U.S.C. §

1343(a)(3) or by virtue of federal question jurisdiction statute 28 U.S.C. §1331.

2. The Court has supplemental jurisdiction over any state law claims because Plaintiff's claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## II.
## VENUE

3. Venue is proper in the Western Division of the District of Idaho because at least one of the Defendants "resides" within Ada County, 28 U.S.C. 1391 (a) and (c). All of the defendants are subject to personal jurisdiction in Idaho.  28 U.S.C. 1391 (a).

## III.
## PARTIES

4. Plaintiff is a resident of the State of Idaho.

5. The Ada County Sheriff's Department is a division of Ada County, State of Idaho. He is sued in his official and individual capacities.

6. Defendant Kate Pape is now and at all relevant times herein was an employee of, or independent contractor for and agent of, the Ada County Sheriff's Department. Plaintiff Babbitt is sued in her official and individual capacities.  Defendant Pape was Plaintiff Babbitt's supervisor within the Ada County Sheriff's Office.

7. Defendant Becky Peterson is now and at all relevant times herein was an employee of, or independent contractor for and agent of, the Ada County Sheriff's Department. Plaintiff Babbitt is sued in her official and individual capacities.

8. John Does I through X, whose true identities are unknown, were agents or employees of the Ada County Sheriff's Department charged with the responsibility to supervise the Plaintiff's employment conditions and to ensure that the Ada County Sheriff's

Department complied with the requirements of the American's with Disabilities Act and the Idaho Human Rights Act.

## IV.
## STATEMENT OF FACTS

3. Plaintiff Babbitt is a registered nurse.

4. Plaintiff Babbitt originally applied for a part-time position as a registered nurse at the Ada County Sheriff's Office (Ada County Sheriff's Office) in 2003.

5. On May 23rd 2003, prior to being hired, Plaintiff Babbitt underwent polygraph test at the request of the Ada County Sheriff's Department.  Submitting to this examination was required if the Plaintiff wanted to be employed by the Ada County Sheriff's Department .

6. Prior to the polygraph test, the Ada County Sheriff's Department had obtained and provided to the polygrapher Plaintiff Babbitt's police contact records which include arrest and non-arrest police contacts.  Plaintiff Babbitt's police non arrest-records showed two (2) past "mental holds".

7. During the polygraph test, the polygrapher asked Plaintiff Babbitt to provide an explanation of the two (2) past "mental holds".

8. Plaintiff Babbitt explained that she had a history of Major Depression and Post Traumatic Stress Disorder and had attempted suicide in the past, which resulted in the two (2) past mental holds.

9. The polygrapher told Plaintiff Babbitt that this information would need to be disclosed to Gary Raney, who was the Undersheriff at the time, and that he would have to approve her employment under the circumstances.

10. Upon information and belief, Plaintiff Babbitt's past psychological history was

communicated to Sheriff Raney, and he approved her being hired.

11. On July 3, 2003 Plaintiff Babbitt was hired by the Ada County Sheriff's Office.

12. Plaintiff Babbitt's initial duties in her initial position with the Ada County Sheriff's Office included:  answering inmate request forms, scheduling sick call for patients, assisting the provider's during sick call clinic, passing medications during med pass, triaging phone calls from security staff and providing nursing services in response to emergent and urgent medical complaints  from inmates, scheduling non-emergent medical complaints for routine sick call, providing nursing services in response to emergencies throughout the facility, working with booking officers and law enforcement officers  in the community who were bringing in potentially medically unstable inmates in to the jail to be cleared for acceptance into the facility, assisting diabetic inmates up to four times a day with their insulin needs, caring for patients who were housed in the medical housing area, ensuring that transfer paperwork and medications were completed and ready to be transmitted or communicated as needed with respect to outgoing inmates, processing medications, reviewing health information for incoming inmates, and other duties as assigned.

13. In October, 2006, Plaintiff Babbitt was promoted to "Inmate Health Care Supervisor" within the Ada County Sheriff's Office.  Plaintiff Babbitt was generally referred to as the "Nursing Supervisor" of the Health Service Unit.

14. Plaintiff Babbitt supervised 18 nursing staff who worked in the medical housing unit, the clinic area, the medication room and the booking area.

15. Plaintiff Babbitt' duties as Nursing Supervisor were to supervise staff in their performance of the duties described above. Other duties included creating monthly

staffing schedules, attending monthly supervisor's meeting, and working with Human
Resources and staffing agencies to staff the unit.

16.    Plaintiff Babbitt also had significant responsibilities in the transition from the Ada
County Jail's 10 bed Medical Unit to an 84 bed Health Services unit.

17.    Plaintiff Babbitt generally provided patient care, counseled, mentored and disciplined
staff as needed, as needed.

18.    Plaintiff Babbitt was on call 24 hours a day, 7 days a week.

19.    In June, 2008 Plaintiff Babbitt started experiencing symptoms of depression.  These
included feelings of depression, low energy, feelings of wanting to isolate, some
irritation, agitation and difficulty concentrating.

20.    In September, 2008 Plaintiff Babbitt's symptoms worsened and she started seeing
psychiatrist, Nicole Thurston, M.D.  At that time, Plaintiff Babbitt was tearful,
anxious, her energy level was significantly decreased, she was having difficulty in
making decisions and concentration was becoming difficult.  Plaintiff Babbitt was
started on a trial of different medications and starting seeing a counselor.

21.    Throughout the remainder of 2008 and 2009, Plaintiff Babbitt continued to receive
professional care and attempted to cope with depression.

22.    Despite qualified medical and psychological intervention, by the end of August 2009
Plaintiff Babbitt was continuing to struggle without significant relief.  Plaintiff
Babbitt started having panic attacks.  Plaintiff Babbitt could not sit or could barely sit
through a meeting due to restlessness and lack of concentration.  Plaintiff Babbitt was
often exhausted and tearful.

23.    By August of 2009, Plaintiff Babbitt felt incapable of making even the simplest

decisions and was frequently seeking the advice from her supervisor.  Plaintiff
Babbitt had isolated herself from her staff and only engaged with them when
absolutely necessary.

24.  Plaintiff Babbitt's Supervisor, Defendant Pape, saw this and verbally discussed her
concerns with Plaintiff Babbitt at that time.  Defendant Pape told Plaintiff Babbitt that
she had a lot of work to do to re-engage back with her staff and start communicating
with them on a more frequent basis.

25.  On September 8, 2009 Plaintiff Babbitt's psychiatrist, Nicole Thurston, M.D.,
recommended that she take a leave of absence under the provisions of the Family and
Medical Leave Act ("FMLA").

26.  Plaintiff Babbitt agreed, but asked to try intermittent FMLA leave first.

27.  On that day Dr. Thurston filled out the FMLA paperwork and it was approved by the
Ada County Sheriff's Office.   The FMLA paperwork asked to accommodate Plaintiff
Babbitt's schedule to work 20-30 hours a week.

28.  Plaintiff Babbitt continued to work 30 hours a week and was still taking calls 24/7.

29.  Plaintiff Babbitt changed physicians and began seeing Dr. Jeffrey Berlant on
September 24, 2009.

30.  Plaintiff Babbitt was still to be on intermittent FMLA leave until October 28, 2009.

31.  During her September 24, 2009 appointment with Dr. Berlant, Dr. Berlant expressed
his concern regarding Plaintiff Babbitt's then present ability to perform nursing duties
even on the basis of her reduced schedule.

32.  Dr. Berlant strongly suggested that Plaintiff Babbitt go on full-time FMLA leave and
step away completely from her work environment on a temporary basis, due to her

significant depressive symptoms, panic attacks, anxiety, tearfulness, inability to
concentrate, be decisive and communicate effectively.

33. In response to Dr. Berlant's concerns, Plaintiff Babbitt contacted Rebecca Peterson in
Human Resources at the Ada County Sheriff's Office and told her that she was seeing
a new physician who was placing her on full-time FMLA.

34. Plaintiff Babbitt asked if new FMLA paperwork needed to be filled out and she was
told "No, a note would be sufficient."

35. Upon information and belief, Defendant Ada County Sheriff's Department is in
possession of a note sent to it by Dr. Berlant at that time in which he advised it that
Plaintiff Babbitt needed to take a leave of absence from all work.

36. Plaintiff Babbitt saw Dr. Berlant again on November 3, 2009 and he extended her
FMLA leave until November 11, 2009.

37. On November 9, 2009, Dr. Berlant extended Plaintiff Babbitt's FMLA leave to at
least November 20, 2009 because of her continuing symptoms and work incapacity.

38. On November 25, 2009, Plaintiff Babbitt saw Dr. Berlant and he OK'd Plaintiff
Babbitt to return to work on December 2, 2009 with an accommodation to work up to
20 hours per week before 2 p.m.  This was relayed to the Ada County Sheriff's Office
Human Resources via a note from Dr. Berlant.

39. Plaintiff Babbitt returned to work on December 2, 2009 and worked on December
2nd, 3rd, 4th, and on the 8th she worked only 2.5 hours.

40. On December 8, 2009, Plaintiff Babbitt's supervisor, Defendant Pape, called Plaintiff
Babbitt into her office to discuss her ability to work.  Defendant Pape told Plaintiff
Babbitt that she felt Plaintiff Babbitt was not being effective in her work and felt like

Plaintiff Babbitt was still struggling.

41. During that meeting, Plaintiff Babbitt agreed that she was continuing to have illness related problems at work, but voiced her concerns about maintaining her position with the Ada County Sheriff's Office due to not having any further FMLA and being on LWOP (Leave without Pay).

42. Defendant Pape told Plaintiff Babbitt that she would meet with the "Executive Team", and let them know what the situation was, and that she would advise the Executive Team that Plaintiff Babbitt was still not well enough to return to work. Defendant Pape advised Plaintiff Babbitt that the purpose of her meeting with the Executive Team would be to get a sense of where they were on continuing Plaintiff Babbitt's accommodation of Leave Of Absence Without Pay. Defendant Pape advised Plaintiff Babbitt that she would let her know as soon as Defendant Pape knew something.

43. On December 10, 2009, Plaintiff Babbitt received a telephone call from Defendant Pape advising her that the Executive Team had approved Plaintiff Babbitt's Leave Of Absence Without Pay until January 1, 2010 and that thereafter Plaintiff Babbitt would need to return to work full time without any restrictions.

44. Plaintiff Babbitt asked Defendant Pape if the Executive Team would honor Dr. Berlant's original November 25, 2009 accommodation request of part-time hours.

45. Defendant Pape stated they would not and re-emphasized that the Executive Team stated that Plaintiff Babbitt would need to return to work "full time and without any restrictions" on January 2, 2010 or Plaintiff Babbitt's employment would end.

46. Plaintiff Babbitt asked if that meant she would be terminated. Defendant Pape stated

"well I hadn't thought of it in those terms, but yes, I guess so."

47. During that conversation, Defendant Pape told Plaintiff Babbitt that she had contacted the Ada County Sheriff's Office contract psychiatrist, Michael Estess, M.D., to see "if you could be well enough to return to work at that time".

48. Plaintiff Babbitt was upset about this, because of Dr. Estess past history of serious unprofessional behavior. Dr. Estess had, in fact, attempted to contact Plaintiff Babbitt, apparently to see how she was doing.

49. Plaintiff Babbitt e-mailed Defendant Pape on December 22, 2009 and advised her that if any further information was needed to please get it from Plaintiff Babbitt's physician.

50. Plaintiff Babbitt asked Defendant Pape to please keep her medical information confidential, especially when it came to Dr. Estess. Plaintiff Babbitt explained that Dr. Estess had "no filter" when it comes to confidentiality.

51. Plaintiff Babbitt explained that she was hurt that Defendant Pape would ask Dr. Estess his clinical opinion of her ability or inability to work, when Dr. Estess had absolutely no history with Plaintiff Babbitt other than two passing conversations she had with him regarding medications and medication side effects.

52. Plaintiff Babbitt and Defendant Pape had previously discussed that she wanted it noted that one never knew which side of Dr. Estess one would get at any given time with him. Dr. Estess would come in or call in and, depending on his sobriety or lack thereof, he would be happy-go-lucky or extremely hostile and agitated. Plaintiff Babbitt advised Defendant Pape that Dr. Estess had called Plaintiff Babbitt and other staff expletives names such as b*tch, sl*t and wh*re. Plaintiff Babbitt advised

Defendant Pape that Dr. Estess had stated that he used these sexually hostile terms merely as "terms of endearment", but that they never felt that way to her.  Plaintiff Babbitt advised Defendant Pape that she had witnessed on more than one occasion staff in tears because of this type of crude behavior on Dr. Estess part.

53. Plaintiff Babbitt and Defendant Pape had previously discussed Dr. Estess breach of confidentiality issues involving Dr. Estess conduct, but Dr. Estess had been of assistance to Defendant Pape and provided the jail with some services without charge, so his conduct was tolerated.

54. Plaintiff Babbitt was seen by Dr. Berlant on December 22, 2009.  At that time, Dr. Berlant did not clear her to return to work on a full-time basis.

55. Although Plaintiff Babbitt knew she had a January 1, 2010 deadline to return to work, on December 28, 2009 she made a request to Defendant Pape for additional Leave of Absence without Pay time until her next appointment with Dr. Berlant, which was scheduled for January 20, 2010.

56.  Plaintiff Babbitt explained in her request for additional Leave of Absence without Pay that her medications needed a little more time to become therapeutic and that she had some significant side effects of one of the medications that she had tried which had set her back.

57. On December 28, 2101, Plaintiff Babbitt advised Defendant Pape that her next appointment with Dr. Berlant was scheduled to occur on January 20, 2010 and she asked to be given at least the opportunity for that much more time.

58. This request and the chain of preceding requests constituted a request for an accommodation under the Americans with Disabilities Act and the Idaho Human

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Rights Act.

59. In making her December 28, 2101 request for additional Leave of Absence without Pay, Plaintiff Babbitt observed that she had been an outstanding, committed employee for 7 years, that she had never had a bad performance evaluation and that her long term goal was to retire from the Ada County Sheriff's Office.

60. Prior to making this request, Plaintiff Babbitt had expressed concern to Defendant Pape and even some of her peers regarding her ability to continue with the stressful nature of her job.

61. Plaintiff Babbitt had voiced frustration about being on call 24/7, about personnel issues, and about her job in general.

62. On several occasions prior to making this request, Plaintiff Babbitt and her supervisor had discussed Plaintiff Babbitt's stepping down as Nursing Supervisor and going back to being a staff RN in order to reduce the stress in her life.

63. In addition to requesting Leave of Absence without Pay, Plaintiff Babbitt offered to step down as Nursing Supervisor because she and her Supervisor Defendant Pape felt it was within the reasonable accommodations for her illness (depression, anxiety, frustration, and stress).   Plaintiff Babbitt's Supervisor and her peers were at all relevant times supportive of her staying on as Nursing Supervisor.

64. When Plaintiff Babbitt discussed her frustration, fears and concerns as the only Nursing Supervisor and voiced being torn over stepping down as Nursing Supervisor or holding on until a second Nursing Supervisor would be hired,  Plaintiff Babbitt's Supervisor commended Plaintiff Babbitt on a job well done and kept reassuring Plaintiff Babbitt that once a second Nursing Supervisor was in place the job duties,

personnel supervision and on call duties would be split thus decreasing the stress.

65. When Plaintiff Babbitt suggested that she would be willing to step down as a Nursing Supervisor, a second Nursing Supervisor had been selected from the RN's currently working at the Ada County Sheriff's Office so there was an open RN position available that Plaintiff Babbitt could have stepped in to.

66. On December 31, 2009 Plaintiff Babbitt received a phone call from her supervisor, Defendant Pape, telling her that employment with the Ada County Sheriff's Office would not be continued.

67. Defendant Pape stated that the agency felt they could not continue Plaintiff Babbitt's employment because her continued absence had caused a critical vacancy within the Health Services team.

68. Several days thereafter, Plaintiff received a letter on or about January 2, 2010 with the subject line Re: Denial of Request for Extension of Unpaid Leave terminating the Plaintiff's employment effective January 1, 2010 confirming her December 31, 2009 telephone conversation with Defendant Pape.

69. On February 11, 2010, Plaintiff Babbitt filed a claim against the Ada County Sheriff's Office with the Equal Employment Opportunity Commission (EEOC) charging the Ada County Sheriff's Office terminated her unduly under the American's with Disability Act.

70. The claim was investigated and on May 6, 2011 a final determination was made by the EEOC.

71. The EEOC determined that there was reasonable cause to believe that the Ada County Sheriff's Office failed to provide Plaintiff Babbitt with a reasonable accommodation

and discharged Plaintiff Babbitt because of her disability.

72. Plaintiff Babbitt returned to work part time at Walter Knox Memorial Hospital June 9th of 2010 as a Chart Auditor/Nursing Software Educator.  In June of 2011 Plaintiff Babbitt assumed that position on a full-time basis.

73. On August 30, 2011 Plaintiff Babbitt received Notice of Right to Sue letter under Title I of the American with Disabilities Act.

74. All conditions precedent have occurred or have been performed, and all administrative requirements precedent to the filing of this complaint have occurred.

75. Plaintiff Babbitt has suffered economic damages, on account of these acts of Defendants, for lost wages, loss of future earnings, loss of employment benefits, and loss of future employment benefits.

76. As a further direct and proximate result of Defendants' violation of the American's with Disabilities Act and the Idaho Human Rights Act, as heretofore described, Plaintiff Babbitt has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff Babbitt.  Plaintiff Babbitt requests that costs and attorneys' fees be awarded to her.

## VII.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §12101, *et seq.*)

76. Plaintiff Babbitt realleges all of the foregoing allegations as though fully set forth *in haec verba.*

---

77. Plaintiff Babbitt was an "employee" of Defendant Ada County Sheriff's Office as defined by 42 U.S.C. § 12111(4).

78. Defendant Ada County Sheriff's Office was Plaintiff Babbitt's "employer" as defined by 42 U.S.C. § 12111(5).

79. Plaintiff Babbitt's long standing psychological condition constitutes a "disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12001, *et seq.*) in that it is "a physical or mental impairment that substantially limits one or more of the major life activities…" 42 U.S.C. § 12102(2)(a).

80. Plaintiff Babbitt was regarded by Defendants as having such an impairment.

81. Notwithstanding Plaintiff Babbitt's impairment, at all relevant times, Plaintiff Babbitt was a "qualified individual with a disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12101, *et seq.*) who was able to perform the essential functions of the job.

82. Plaintiff Babbitt has a record of having a mental impairment that substantially limits one or more of her major life activities.

83. Plaintiff Babbitt suffers from long-standing depression.

84. Plaintiff Babbitt was initially diagnosed as suffering from depression by Zane Nelson, PhD. in 1980.  Plaintiff has been and continues to be treated for depression since that time.

85. Plaintiff has been most recently diagnosed by Dr. Jeffrey Berlant as suffering from Treatment Resistant Depression and Generalized Anxiety Disorder, a diagnosis recognized by the Diagnostic and Statistical Manual of Mental by the American Psychiatric Association.

86. Plaintiff Babbitt's depression, when not properly controlled interferes and has interfered for most of her life with the following major life activities:

87. When suffering from acute or uncontrolled depression, Plaintiff has severe difficulty interacting with others.  On a regular basis she experiences severe problems in this regard marked by consistently high levels of hostility, social withdrawal, or failure to communicate when necessary.

88. When suffering from acute or uncontrolled depression, Plaintiff isolates herself from others as much as possible, which is the majority of the time.  Plaintiff stops or largely avoids engaging with her significant other, family, friends, co-workers and the community in general.

89. When suffering from acute or uncontrolled depression, Plaintiff's depression hinders her ability to find pleasure in doing things she usually enjoys doing when not suffering from relatively acute or uncontrolled depression.

90. When suffering from acute or uncontrolled depression, Plaintiff is unable to obtain sufficient restorative sleep, despite the fact that she often remains in bed and asleep the majority of the day.  Despite this, when Plaintiff is out of bed, she is tired and has difficulty concentrating or focusing on her work or household activities.

91. When suffering from acute or uncontrolled depression, Plaintiff sleeps 14-16 hours a day, but does not obtain restorative sleep.  Plaintiff does not want to get out of bed, shower or take care of her activities of daily living.  Plaintiff essentially hides out in a semi-conscious state the majority of each day in which she is incapable of performing all major life activities.

92. When suffering from acute or uncontrolled depression, Plaintiff experiences

debilitating emotional exhausted.

93.     When suffering from acute or uncontrolled depression, Plaintiff becomes dreadfully hopeless about the present and future, and feels that there is no reason to go on living.

94.     When suffering from acute or uncontrolled depression, Plaintiff becomes suicidal.

95.     When suffering from acute or uncontrolled depression, Plaintiff's ability to think is continuously substantially limited and her ability to think is continuously impaired at some level.

96.     When suffering from acute or uncontrolled depression, Plaintiff's short term memory and ability to concentrate and think are continuously diminished.  Plaintiff cannot stay focused on anything for more than very brief periods, and constantly forgets things that one must remember or keep in mind to do normal daily activities.

97.     When suffering from acute or uncontrolled depression, Plaintiff struggles with concentration.  During these periods, it is hard for the Plaintiff even to do simple tasks like balancing Plaintiff's checkbook, reading a book or following the content of a television program.

98.     When suffering from acute or uncontrolled depression, Plaintiff cannot read for more than a few minutes at a time with sustained attention and concentration.  If she attempts to read for longer, she loses focus, forgets what she has just read, and lacks comprehension.  This affects not only her ability to read for pleasure, but as required in the performance of normal daily activities and all forms of work.

99.     Because of these problems experienced when Plaintiff is suffering from acute or uncontrolled depression, Plaintiff has serious difficulty learning any new material of

a technical nature, and serious difficulty processing and analyzing the information required of her in her profession of nursing.

100. When suffering from acute or uncontrolled depression, Plaintiff is unable to work not simply at the position that she held with the Ada County

101. When suffering from acute or uncontrolled depression, Plaintiff constantly forgets tasks or agendas that she has set for herself, and is unable to complete work requiring sustained focus.

102. When suffering from acute or uncontrolled depression, Plaintiff gets restless, anxious and tearful. Plaintiff cannot control her emotions, has panic attacks and a sense of impending doom.

103. When suffering from acute or uncontrolled depression, Plaintiff cannot sit through a movie, or even take a car ride because of the restlessness.

104. When suffering from acute or uncontrolled depression, Plaintiff becomes overly sensitive and finds herself crying over anything or nothing at all.

105. When suffering from acute or uncontrolled depression, Plaintiff continuously has difficulty, to one degree or another, communicating with others.

106. When suffering from acute or uncontrolled depression, Plaintiff gets easily irritated and agitated disproportionately to the situation she finds herself in. Plaintiff finds that she will sometimes lash out at others for something minor or for no reason at all but often cannot put her finger on why she feels irritated or agitated.

107. When suffering from acute or uncontrolled depression, Plaintiff finds that she will sometimes hurt other's feelings when she does not intend to.

108. When suffering from acute or uncontrolled depression, Plaintiff feels bad about

herself and her disease.  During these periods, Plaintiff feels that she is a failure and has let others down.

109.  Plaintiff believes that she has lost relationships because of her mental illness.  When suffering from acute or uncontrolled depression, Plaintiff blames herself and feels shameful.

110.  When suffering from acute or uncontrolled depression, Plaintiff often lacks energy and is unable to complete many of her major life activities such as doing house work, adequately attending to personal hygiene, doing her laundry, having the energy to do household paperwork, engage in recreation, or simply obtain sufficient restorative sleep.

111.  Plaintiff Babbitt's depression has been successfully treated by the administration of psychotropic medications and other modalities, though those medications at times needed to be adjusted or changed.

112.  Plaintiff Babbitt was terminated by Defendant Ada County Sheriff's Office because of her disability, or alternatively, as a result of being regarded as having a psychological impairment.

113.  Plaintiff Babbitt's disability could have been accommodated by continuing a leave of absence from work for a reasonable period of time to allow the medication adjustment made by her physician, Dr. Berlant, to take effect.

114.  Plaintiff Babbitt was terminated by Defendant Ada County Sheriff's Office, because it did not want to make a reasonable accommodation, or enter into and/or continue in a good-faith dialogue about what accommodation might be appropriate.

115.  Upon information and belief, Plaintiff Babbitt further asserts that Defendant Ada

County Sheriff's Office terminated her, because Defendant Ada County Sheriff's Office did not want to or was unwilling to make a "reasonable accommodation" (as defined by 42 USC § 12111(9)) to permit her to continue to perform the essential functions of her job.

116. Plaintiff Babbitt filed a Charge of Discrimination with the U. S. Equal Employment Opportunity Commission based on the foregoing facts.

117. After the completion of its investigation in Charge No. 551-2010-00477, the U. S. Equal Employment Opportunity Commission issued its "Determination" finding that there is reasonable cause to believe that the Ada County Sheriff's Office failed to provide Plaintiff Babbitt with a reasonable accommodation and discharged her because of her disability.  An authentic copy of that "Determination" is attached hereto as Exhibit A.

118. Plaintiff Babbitt sustained damages as a direct and proximate result of that discrimination as described above.

**SECOND CAUSE OF ACTION – VIOLATION OF THE IDAHO HUMAN RIGHTS ACT (I.C. §67-5901, *et seq.*)**

119. Plaintiff Babbitt realleges all of the foregoing allegations as though fully set forth *in haec verba*.

120. Defendant Ada County Sheriff's Office, through its agents or supervisors, engaged in a pattern and practice of unlawful disability discrimination by resulting in the termination of Plaintiff Babbitt for her disability or, alternatively, because it regarded Plaintiff Babbitt as disabled in violation of the Idaho Human Rights Act contained in I.C. §67-5901, et seq.

121. Defendant Ada County Sheriff's Office, at all times relevant hereto, had actual or

constructive knowledge of the conduct of the agents that discriminated against Plaintiff Babbitt.

122. Defendant Ada County Sheriff's Office violated the Idaho Human Rights Act by making an employment decision to terminate based, at least in part, on Plaintiff Babbitt's disability, or, alternatively, because they regarded Plaintiff Babbitt as disabled.

123. Plaintiff Babbitt's psychological disability was a substantial factor in Defendant Ada County Sheriff's Office's decision to terminate.

124. Defendant Ada County Sheriff's Office failed to comply with their duty to take all reasonable and necessary steps to eliminate disability discrimination from the workplace and to prevent it from occurring in the future.

125. Plaintiff Babbitt is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants, and each of them, have engaged in other discriminatory practices against her which are not yet fully known. Any such additional conduct is incorporated herein by reference to the extent that evidence of it exists in the Defendant's records.

126. As a further direct and proximate result of Defendants' violation of the Idaho Human Rights Act, as heretofore described, Plaintiff Babbitt has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff Babbitt. Plaintiff Babbitt requests that costs and attorneys' fees be awarded to him.

127. Plaintiff Babbitt sustained damages as a direct and proximate result of that discrimination as described above.

128. As a direct and proximate result of the acts and omissions of Defendants, by and through their agents and/or representatives, Plaintiff Babbitt has also sustained damages as stated in the prayer for relief below.

**THIRD CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

129. Plaintiff Babbitt realleges all of the foregoing allegations as though fully set forth *in haec verba*.

130. Plaintiff Babbitt enjoyed, prospectively, a reasonable expectation of continued employment, future economic benefits, and prospective advantage with Defendant Ada County Sheriff's Office.

131. Defendants Raney, Pape, Peterson and John Does I through XX, at the times of the acts complained of were committed, knew of this relationship or expectancy or should have known of it.

132. Except for the conduct of Defendants Raney, Pape, Peterson and John Does I through XX, Plaintiff Babbitt was reasonably certain to have continued in this employment.

133. The conduct of Defendants Raney, Pape, Peterson and John Does I through XX was intentional.

134. The conduct of Defendants Raney, Pape, Peterson and John Does I through XX was wrongful beyond the fact of the interference itself.

135. At the direction of Defendants Raney, Pape, Peterson and John Does I through XX, Plaintiff Babbitt's employment contract was terminated.

136. Upon information and belief, Defendants Raney, Pape, Peterson and John Does I through XX had an improper purpose or objective to harm Plaintiff Babbitt, to wit, terminating her gainful employment for having a disability, or being regarded as having from a disability.

137. The conduct of Defendants Raney, Pape, Peterson and John Does I through XX was actuated by actual malice, or, in the alternative, by an improper purpose or objective.

138. The conduct of Defendants Raney, Pape, Peterson and John Does I through XX was not justified.

139. The termination of Plaintiff Babbitt was wrongful and caused injury to her prospective business relationships with Defendant Ada County Sheriff's Office, prospective employers, and future expectations of economic benefit.

140. As a direct and proximate result of the acts and omissions of Defendants Raney, Pape, Peterson and John Does I through XX, by and through their agents and/or representatives, Plaintiff Babbitt has sustained damages as stated in the prayer for relief below.

**WHEREFORE, Plaintiff prays judgment against Defendants as follows:**

1. Special damages, stemming from lost income and benefits, in the amount of not less than $500,000 or such further amount as may be proven at trial.

2. All relief recoverable under by the Americans with Disabilities Act 42 U.S.C. 2000(e) *et. seq.* including reasonable costs and attorneys fees.

3. An award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

4. For leave to amend this complaint to add additional causes of action based upon the outcome of discovery.

5. For Plaintiff's reasonable costs and attorneys fees incurred herein.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

Dated October /4th, 2011.

By: _Wm. Breck Seiniger_
Wm. Breck Seiniger, Jr. (ISB# 2387)
*Attorney for Plaintiff Babbitt*

**VERIFICATION**

STATE OF IDAHO           )
                         ) ss.
County of _ADA_          )


**Jennifer Lynn Babbitt,** being first duly sworn on oath, deposes and says that she has read the foregoing, knows the contents thereof and believes the same to be true.

_Jennifer Lynn Babbitt_
Jennifer Lynn Babbitt

SUBSCRIBED AND SWORN before me this _14th_ day of October, 2011.

_Wm Breck Seiniger_
Notary Public for Idaho
Residing at: _Boise_
Commission Expires: _4/1/17_

**COMPLAINT AND DEMAND FOR JURY TRIAL**
